**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Jackson,<br><br>    Plaintiff,<br><br>vs.<br><br>Lake Mohave Ranchos Fire District, et al.,<br><br>    Defendants. | No. CV-21-08156-PCT-SPL<br><br>**ORDER** |

Before the Court are Defendant's Motion for Summary Judgment on Count Two and Count Three of First Amended Complaint (Doc. 105), Defendant's Statement of Facts to Support Motion for Summary Judgment on Count Two and Count Three of First Amended Complaint (Doc. 106), Plaintiff's Motion for Partial Summary Judgment (Doc. 107), and Plaintiff's Statement of Facts (Doc. 108). The Motions have been fully briefed and are ready for consideration.[1] (Docs. 109, 110, 111, 112, 115, 116). The Court rules as follow.

**I. BACKGROUND**

This case is based on an employment discrimination dispute. Defendant Lake Mohave Ranchos Fire District ("the District") provides fire, medical, and community services to residents who live within the District's boundaries. (Docs. 106 at ¶ 1). The

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

District is governed by board members (the "Board"), and the Board manages the District's finances, ensures the District operates within the budget, and employs the Fire Chief. (Docs. 106 at ¶ 2). At relevant times, the Fire Chief was responsible for, among other things, the hiring, equipping, training, oversight, and evaluation of the work of all District personnel. (Doc. 109 at 1). In November 2016, the District employed Plaintiff Karen Jackson to work as the Administrative Assistant. (Docs. 106 at ¶ 8; Doc. 108 at ¶ 1). Plaintiff was an hourly employee and was expected to work at least 32 hours per week in the District office. (Doc. 106 at ¶ 10; Doc. 110 at 1).

Plaintiff attributes the following circumstances to the fact that she has long suffered from, and been diagnosed with, anxiety, depression, and Post Traumatic Stress Disorder ("PTSD"). (Doc. 109 at 2). Plaintiff claims to have a significant mental health history that began when she was only 12, which includes substantial difficulty sleeping, depression, and suicidal ideation. (*Id.*). In or about 2001, Plaintiff was drugged and raped by someone she met at a bar. (*Id.*). From about 2004 to 2006, Plaintiff was verbally and physically abused by her former husband; and in 2006, she was raped by this former husband. (*Id.*). Plaintiff claims that her medical problems affect her ability to groom properly, have sexual relations with her husband, and interact with others. (*Id.*). It also causes her to experience periods of generalized fear, severe anxiety, mistrust, and several other issues. (*Id.*).

On December 20, 2016, Plaintiff was the only person in the fire station when "a woman ran into the station screaming and bloodied, and told [Plaintiff] that a man was trying to rape her." (Doc. 110 at 5). In February 2017, the Fire Chief, Tony DeMaio, approved Plaintiff's request to work from home because Plaintiff was pregnant and felt unsafe working in the office alone. (Doc. 106 at ¶¶ 11–16; Doc. 110 at 6). In November 2017, the Board asked Mr. DeMaio why Plaintiff did not perform her duties in the office, and he expressed that the Board could not ask questions about why Plaintiff worked from home because "it was protected by law." (Doc. 106 at ¶ 20–23; Doc. 110 at 7). Nevertheless, Mr. DeMaio told the Board that Plaintiff worked at home to "tak[e] care of her baby." (Doc. 106 at ¶ 20–23; Doc. 110 at 7). The parties dispute whether Mr. DeMaio

2

ever informed the Board that Plaintiff was experiencing medical problems. (*Id.*).

In May 2019, Mr. DeMaio retired as the Fire Chief. (Doc. 106 at ¶ 24; Doc. 110 at 1). The fire chief position changed two additional times during Plaintiff's employment. (Doc. 106 at ¶¶ 24, 37; Doc. 110 at 1). The parties agree that Plaintiff told both of the fire chiefs that she worked from home due to a disability. (Doc. 106 at ¶¶ 25, 38; Doc. 110 at 3, 8). The parties, however, dispute whether Plaintiff provided the fire chiefs or the Board with any additional information or documentation pertaining to her disability. (*Id.*).

After November 2019, Plaintiff was still working from home when the Board changed Plaintiff's title to Administrative Manager and gave her a raise. (Doc. 106 at ¶¶ 29–30; Doc. 110 at 1). But on December 7, 2020, the Board held a special meeting and voted to eliminate the Administrative Manager position. (Doc. 106 at ¶ 45; Doc. 108 at ¶ 8). Following this meeting, several members of the public filed complaints with the Arizona Attorney General's Office (the "AGO") alleging that the Board violated Arizona's open-meeting law by voting to eliminate the Administrative Manager position when that issue was not on the agenda. (Doc. 106 at ¶ 50; Doc. 110 at 1). On December 9, 2020, Plaintiff emailed the Fire Chief stating that she understood the Board's actions to mean her employment was terminated, and the Fire Chief confirmed that her understanding was correct. (Doc. 31 at ¶ 55).

On December 17, 2020, the Board held a subsequent meeting with a new agenda for the purpose of ratifying the votes taken on December 7, 2020. (Doc. 106 at ¶ 50–53; Doc. 108 at ¶¶ 13–15). On January 28, 2021, the Board received a letter from the AGO regarding the open-meeting law complaints, and the Board responded that it had ratified the actions from December 7, 2020. (Doc. 106 at ¶ 54–55; Doc. 110 at 1). On October 29, 2021, the Board received another letter from the AGO stating it had concluded that open-meeting law violations had occurred in December 2020. (Doc. 106 at ¶ 56; Doc. 108 at ¶¶ 18–19).

On January 13, 2022, Plaintiff served Defendant a Notice of Claim. On May 13, 2022, Plaintiff filed her First Amended Complaint ("FAC"), alleging three causes of action against the District and individual members of the Board. (Doc. 109 at 9).

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). When parties file cross-motions for summary judgment, the court must review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences. *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1118 (9th Cir. 2018).

## III. DISCUSSION

Both parties are moving for partial summary judgment with respect to Counts Two and Three asserted within the FAC. (Doc. 31). In Count Two, Plaintiff alleges that Defendant discriminated against her under the Americans with Disabilities Act of 1990 (the "ADA") by eliminating the Administrative Manager position. (Doc. 31 at 8–9). In Count Three, Plaintiff alleges that Defendant violated Arizona's Employment Protection Act by terminating her from her employment. (Doc. 31 at 9). The Court will address the claims individually.

### A. Count Two: Disability Discrimination Claim Under The ADA

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To withstand a motion for summary judgment on an ADA claim, a plaintiff must either provide sufficient direct evidence of an employer's discriminatory intent, or give rise to an inference of discrimination by satisfying the burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Mickealson v. Cummins, Inc.*, 792 F. App'x 438, 440 (9th Cir. 2019) (internal citations omitted). "To establish a prima facie case for disability discrimination under the ADA, a plaintiff must show that: (1) [s]he is disabled, (2) [s]he is qualified to perform the essential functions of [her] position, and (3) [s]he suffered an adverse employment action because of [her] disability." *Id.*

### i. Defendant Is An "Employer" Under The ADA

As an initial matter, Plaintiff moves for summary judgment to establish that Defendant is an employer as defined by the ADA. (Doc. 107 at 11). The ADA defines an "employer" as a person "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C.A. § 12111. During discovery, Defendant produced a list of individuals who were employed at the District in some compacity from January 2016 through December 2020. (Doc. 108-1 at 2–3). The parties do not dispute that Plaintiff was terminated in December 2020, therefore, 2019 and 2020 are the relevant years for calculating Defendant's employees.

Plaintiff argues that "the District had employment relationships with 20 employees for each working day in each of 20 or more calendar weeks in 2020, and had employment relationships with 26 employees for each working day in each of 20 or more calendar weeks in 2019." (Doc. 107 at 12). Defendant raises no factual dispute concerning the list that Plaintiff relied on to reach this total, however, Defendant objects to the method that Plaintiff used to calculate the total number of employees. (Doc. 111 at 13). Plaintiff argues that the total number of employees include all employees that were on Defendant's payroll in 2019 and 2020. (Docs. 107 at 12). But Defendant argues that the total should not include part-time and sporadic employees who did not actually work for Defendant every week during the year. (Doc. 111 at 13). Defendant's method for calculating the total is incorrect because "[an individual] is counted as an employee for each working day after [the individual's] arrival and before [the individual's] departure," and not the number of individuals compensated on a given day. *See Walters v. Metro. Educ. Enterprises, Inc.*, 519

U.S. 202, 211–12 (1997) (finding that the ultimate touchstone for defining employer is the number of employment relationships that exists). Therefore, Defendant is an employer under the ADA because it maintained employment relationships with at least fifteen employees in 2019 and 2020. (*See* Doc. 108-1 at 2–3). For the following reasons, however, Plaintiff's motion for summary judgment with respect to Court Two is nevertheless denied as moot.

## ii. Disability Discrimination

Defendant moves for summary judgment to dismiss Count Two because Plaintiff fails to establish a prima facie case for disability discrimination under the ADA. (Doc. 105 at 8). "To bring a successful ADA discrimination claim, a plaintiff must first prove that [s]he is disabled as defined by the ADA." *Higley v. Rick's Floor Covering, Inc.*, 400 F. App'x 244, 245 (9th Cir. 2010). The ADA provides that a person is deemed disabled if that person has (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) is "regarded as having such an impairment." 42 U.S.C.A. § 12102(1). Under the first prong, "major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102(2)(A). "'Substantially limited' means that a person is 'significantly restricted as to condition, manner or duration under which [she] can perform [the] particular major life activity as compared to . . . [an] average person in the general population.'" *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1092 (E.D. Cal. 2017) (quoting *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 885 (9th Cir. 2004).

The second prong, a "record of such an impairment" may be established "if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). To prove a disability exists under the "regarded as" prong, a plaintiff must show that her employer mistakenly perceived her as having either "a physical impairment

that substantially limits one or more major life activities, or . . . an actual, nonlimiting impairment substantially limits one or more major life activities." *Coons*, 383 F.3d at 886 (citation omitted); 42 U.S.C.A. § 12102(3). Stress, depression, panic attacks, and PTSD can all be considered mental impairments under the ADA. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1088 (9th Cir. 2001).

Here, Defendant argues that Plaintiff failed to show that she has a disability under the first prong. (Doc. 105 at 9). Defendant explains that Dr. Tsanadis completed an independent medical examination of Plaintiff and noted that "there is no compelling evidence in the available documentation to indicate that she had any functional impairment after [the incident with the woman at the District office.]" (Doc. 106-3 at 28–29). According to Dr. Tsanadis, Plaintiff reported that "she has a significant history of mental health treatment and conditions as well as a significant trauma-related history." (Doc. 106-3 at 28). Ultimately, Dr. Tsanadis concluded that "due to evidence of over-reporting of symptoms, an accurate diagnosis is not possible." (Doc. 106-3 at 29). Dr. Tsanadis' final diagnostic impressions were that Plaintiff had "PTSD (per history)," "Unspecified Depressive Disorder," and "Unspecified Anxiety Disorder." (Doc. 106-3 at 30). Defendant also argues that Plaintiff failed to put forth any evidence to support her claims that she was previously diagnosed with anxiety, depression, and PTSD by a medical professional.

Plaintiff argues that Dr. Tsanadis' diagnostic impressions are enough to cast doubt and survive summary judgment. (Doc. 109 at 12). At her deposition, Plaintiff alleged that she was first diagnosed with PTSD in 2017 by Dr. Kenneth Jackson (no relation to Plaintiff Karen Jackson). (Doc. 106-1 at 82). She further alleged that Dr. Jackson diagnosed her with "something related to the anxiety, PTSD, and depression." (Doc. 106-1 at 80). The only medical evidence Plaintiff provided to support that she has been diagnosed with anxiety, PTSD, and depression are three doctors' notes that state Plaintiff should work from home due to one or more of these conditions. (Doc. 110-1 at 67–71). But each of the three doctors confirmed that they never *diagnosed* Plaintiff with anxiety, PTSD, and depression. (Docs. 106-2 at 83, 106-3 at 4, 11). Instead, the doctors wrote the notes based on

information that they received from Plaintiff. (Docs. 106-2 at 77–81, 106-3 at 4, 16). More importantly, during his deposition, Dr. Jackson stated that he has "never personally diagnosed *anybody* with PTSD." (Doc. 106-2 at 83) (emphasis added). Even assuming the doctors' notes are evidence showing that Plaintiff has been *diagnosed* with a mental impairment, the notes make no comment about whether Plaintiff's impairment substantially limit any major life activities. (Doc. 110-1 at 67–71). And while Plaintiff asserts that her alleged mental impairments have a "negative affect" on major life activities, she does not offer any further details or claims that these "negative affects" are any greater than that of the average person. *See Coons*, 383 F.3d at 886.

For these same reasons, Plaintiff has failed to show that there is a record of any mental impairments that substantially limited any major life activity. *See id.* (finding that plaintiff did not introduce a record of an impairment substantially limiting any major life activity where the only evidence proffered was a letter from his doctor stating that he suffered from various impairments without referencing its effect on major life activities). Lastly, Plaintiff failed to present evidence showing that Defendant regarded her as having any mental impairments that substantially limited a major life activity.

Because the Court finds there is no question of material fact as to whether Plaintiff was disabled, the claim for disability discrimination cannot survive. Summary judgment will be granted on this claim in favor of Defendant.

### B. Count Three: Wrongful Termination Claim Under The AEPA

Pursuant to the Arizona Employment Protection Act (the "AEPA"), "[a]n employee has a claim against an employer for termination of employment only if," in relevant part, "[t]he employer has terminated the employment relationship of an employee in violation of a statute of this state." A.R.S. § 23-1501(A)(3)(b). However, "[i]f the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy set forth in or arising out of the statute." *Id.*

Plaintiff alleges that during the special meeting on December 7, 2020, Defendant

wrongfully terminated her under the AEPA by violating Arizona's open-meeting law at A.R.S. § 38-431.02(H) (the "Open Meeting law"). (Doc. 31 at 9). The Open Meeting law provides that when a public body hosts a meeting, it shall provide a public notice which includes an agenda that "list[s] the specific matters to be discussed, considered or decided at the meeting." A.R.S. § 38-431.02(H). Moreover, "[t]he public body may discuss, consider or make decisions only on matters listed on the agenda and other matters related thereto." *Id.* There is no genuine dispute that the agenda for the December 7th meeting failed to specify that the Board would discuss, consider, and decide to eliminate the Administrative Manager position in violation of the Open Meeting law. (Doc. 105 at 13–14; Doc. 107 at 6). However, Defendant argues that Plaintiff's claim is barred by the AEPA's exclusive-remedy provision and the statute of limitations.

i. Exclusive Remedy

The parties dispute whether the Open Meeting law provides Plaintiff with an exclusive remedy that bars Plaintiff from bringing a claim under the AEPA. The Open Meeting law provides that any person affected by the statute may commence a suit in the superior court "for the purpose of requiring compliance with, or the prevention of violations" of the statute. A.R.S. § 38-431.07. Civil penalties awarded pursuant to the Open Meeting law shall not to exceed $500 for the second offense and $2,500 for the third and subsequent offenses. *Id.* Any civil penalties awarded under the statute, "shall be deposited into the general fund of the public body concerned." *Id.* "The court may also order payment to a successful plaintiff in a suit brought under this section of the plaintiff's reasonable attorney fees." *Id.*

Plaintiff cites to *Chen v. Cozzoli, LLC*, to argue that the Open Meeting law does not provide a remedy for wrongful termination. In *Chen*, the plaintiff asserted a wrongful termination claim under the AEPA asserting that the defendant violated criminal theft and assault statutes. *Chen v. Cozzoli LLC*, No. CV-21-01025-PHX-DWL, 2022 WL 5169236, at *4 (D. Ariz. Oct. 5, 2022). The defendant moved to dismiss the claim and argued that the AEPA's exclusive-remedies provision "bars AEPA claims premised on Arizona's

9

criminal theft and assault statutes because they have their own remedial scheme[s] (i.e., prosecution)." *Id.* This Court held that the exclusive-remedy provisions are applicable to one particular category of statutes—those that regulate the employee-employer relationship. *See id* at *6. The Court explained that the "exclusive-remedy provisions make sense 'in the employment relationship, [where] overlapping theories of recovery . . . make the calculation of damages uncertain.'" *Id.* at *7 (quoting *Cronin v. Sheldon*, 991 P.2d 231, 241 (Ariz. 1999)). The Court also added that this concern is inapplicable where the statute does not present uncertainty concerning the amount that the plaintiff can recover under AEPA. *Id.*

Defendant argues that the facts in *Chen* are distinguishable because unlike the criminal statutes in discussed in *Chen*, "[t]he Open Meetings laws provide [Plaintiff] with a remedy she can pursue as a private citizen without relying upon prosecutor discretion to pursue criminal charges." (Doc. 111 at 9). This is true; however, the Open Meeting law does not regulate the "employee-employer relationship." Moreover, if Plaintiff's claim prevails, there will be no overlapping theories of recovery. As the Open Meeting law provides, Plaintiff's recovery would be limited to reasonable attorney's fees, and any civil penalties recovered will go directly to the "general fund of the public body." *See* A.R.S. § 38-431.07. Therefore, the exclusive-remedy provisions are not applicable here. *See also Smith-Florez v. City of Nogales*, No. CV 09-139-TUC-FRZ, 2010 WL 11515521, at *4 (D. Ariz. May 18, 2010) (denying defendant's motion to dismiss an AEPA claim asserting that plaintiff was wrongfully terminated for reporting violations of Arizona's open-meeting laws).

        ii.  <u>Statute of Limitations</u>

The parties agree the statute of limitations in this case is one year from the date of accrual. *See* A.R.S. § 12–541(4); (Doc. 105 at 14–15; Doc. 109 at 15). The parties also agree that accrual is subject to the discovery rule, meaning the limitations period does not begin running until "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*

*of Am.*, 182 Ariz. 586, 898 P.2d 964, 966 (1995) (*See Doc.* 105 at 15; Doc. 109 at 16). Plaintiff "need not know all the facts underlying a cause of action" because accrual is triggered when Plaintiff possesses at least a "minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)). Generally, determining whether an action has accrued is a question of fact, however, "[a]ccrual can be decided as a matter of law when 'there is no genuine dispute as to facts showing the plaintiff knew or should have known the basis for the claim.'" *Strojnik v. State ex rel. Brnovich*, No. 1 CA-CV 20-0423, 2021 WL 3051887, at *3 (Ariz. Ct. App. July 20, 2021) (quoting *Humphrey v. State*, 466 P.3d 368, 375 ¶ 25 (Ariz. Ct. App. 2020)).

Here, there is no genuine dispute as to the facts showing that Plaintiff's claim accrued by December 7, 2020, when Defendant eliminated Plaintiff's position in violation of the Open Meeting law. First, Plaintiff admits that she understood the Board's actions on December 7, 2020, to mean that her employment was terminated. (Doc. 107 at 3). Moreover, Plaintiff alleges in her FAC that:

> 79. The Board took legal action during its meeting **on December 7, 2020**, including passing a motion to terminate Jackson's employment with the District, **in violation of Arizona's open meeting law** at A.R.S. § 38-431.02(H).

(Doc. 31 at 9) (emphasis added). Plaintiff also states in her Motion that there is "no genuine dispute that [Defendant] violated A.R.S. §§ 38-431.02(A) and (H) at its meeting on December 7, 2020." (Doc. 107 at 6). Additionally, Plaintiff asserts that she was aware that, under the advice of its legal counsel, Defendant scheduled an additional meeting on December 17, 2020, to ratify its decision to terminate her employment. (Doc. 107 at 10).

Nevertheless, Plaintiff objects that the accrual date is December 7, 2020, because she did not know Defendant failed to ratify its decision to terminate her employment, and therefore did not know that Defendant violated the Open Meeting law, until after October 29, 2021, when the AGO sent its letter to Defendant. (*Id.*). In other words, without any

legal authority, Plaintiff claims that Defendant's attempt to correct its failure to follow the Open Meeting law tolled her claim until the AGO confirmed whether the ratification was proper. In response, Defendant argues that "it is irrelevant for accrual purposes whether the District Board in fact violated the Open Meeting laws." (Doc. 105 at 16). The Court agrees. Pursuant to Arizona's open-meeting laws, "[a]ny person affected by an *alleged* violation" of the open-meeting laws has standing to commence a suit. A.R.S. § 38-431.07 (emphasis added). Therefore, Defendant's belief that it complied with the law or later ratified its decision had no impact on the accrual date. Accordingly, as a matter of law, Plaintiff's claim is time barred. For the same reasons, Plaintiff's claim that her termination is null and void also fails.

### IV.    CONCLUSION

In reviewing the record, motions, and responsive briefings, the Court has found no issues of material fact or law on any of Plaintiff's claims. The Court found Defendant met its burden of proof on each claim to prevail on its Motion. The Court further found Plaintiff's Motion is moot as to Count Two and found in favor of Defendant as to Count Three. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 107) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment on Count Two and Count Three of First Amended Complaint (Doc. 105) is **granted**.

Dated this 16th day of January, 2024.

Honorable Steven P. Logan
United States District Judge